IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

FILED
SEP 1 2016
DAVID CREWS, CLERK
BY_____ Deputy

UNITED STATES OF AMERICA

v.

CRIMINAL CASE NO.
18 U.S.C. § 1347
18 U.S.C. § 371

WALTER CORNELIUS GOUGH, JR., and
MAY BAILEY GOUGH

**INFORMATION**
(On Waiver of Indictment)

The United States Attorney charges that:

**Count One**
(Healthcare Fraud Conspiracy)

**Introduction**

At all times relevant herein:

1. Andre Kirkland was part owner and operated Revelation Hospice and Palliative Care, LLC. ("Revelation") Revelation applied for and received a Medicare provider number to purportedly provide hospice services in the Northern District of Mississippi. Revelation also applied for and received a Medicaid provider number.

2. DR. WALTER CORNELIUS GOUGH, JR. was a medical doctor, licensed to practice in the State of Mississippi. GOUGH, JR. owned and operated a private family practice in Drew, Mississippi. GOUGH, JR. was also employed by Revelation as a Medical Director.

3. MAY BAILEY GOUGH was married to WALTER CORNELIUS GOUGH, JR. and worked for GOUGH JR.'s private family practice in Drew, Mississippi.

## The Medicare / Medicaid Programs and Hospice Care

4. The Centers for Medicare & Medicaid Services (CMS), a federal agency within the United States Department of Health and Human Services, was a department of the United States government with responsibilities under federal law for the funding, administration, and supervision of certain health care programs, including the Medicare and Medicaid programs. Medicare and Medicaid were both "health care benefit programs" as defined in 18 U.S.C. § 24(b).

5. Medicare was a federal health insurance program that provided coverage for individuals 65 years or older and for certain disabled individuals. Medicare was financed by federal funds from payroll taxes and premiums paid by beneficiaries.

6. The Medicare program consisted of several parts, one of which, relevant to this Indictment, was referred to as "Part A" hospital insurance, which covered inpatient care in hospitals, nursing homes, and skilled nursing facilities. If certain requirements were met, Part A also covered hospice or home health care.

7. The Medicaid Program was a joint Federal and State funded health insurance program that was administered by the State Division of Medicaid. Medicaid provided medical care to low income individuals and certain others with disabilities. Although Medicaid was a federal program, private insurance organizations called intermediaries and carriers contracted with CMS to process and pay claims submitted by health care providers. Under certain conditions, Medicaid would pay claims for hospice care.

8. To qualify for hospice care under Medicare and Medicaid, a patient must be certified by a physician as terminally ill with a life expectancy of six months or less if the terminal condition runs its normal course. At the end of a 90 day enrollment period, a physician

may re-certify a patient for hospice care if the patient remained terminally ill. See 42 C.F.R. § 418.21.

9. When a Medicare and Medicaid beneficiary is receiving hospice care, the beneficiary must waive all right to have Medicare and Medicaid pay for other medical care that is related to the treatment of the diagnosed terminal condition or any related condition.

10. A Medicare and Medicaid beneficiary can end hospice services and reinstate their Medicare and Medicaid benefits by executing a revocation of hospice benefits.

11. Revelation, as a purported hospice provider, submitted claims and received payments from Medicare and Medicaid.

12. From on or about September 16, 2010, until on or about February 28, 2014, Andre Kirkland, and other persons known and unknown to the United States, through Revelation, submitted claims for reimbursement to Medicare and Medicaid for hospice services that resulted in the total payment of approximately $7,241,877.21 in Medicare funds, and the payment of approximately $66,171.43 in Medicaid funds to Revelation.

## The Conspiracy to Defraud Medicare and Medicaid

13. From on or about January 16, 2012, until on or about February 28, 2014, in the Northern District of Mississippi and elsewhere, defendants DR. WALTER CORNELIUS GOUGH, JR. and MAY BAILEY GOUGH, did knowingly and willfully conspire and agree with Andre Kirkland, and with others known and unknown to the United States, to execute a scheme and artifice, affecting interstate commerce, to defraud a health care benefit program, that is, Medicare and Medicaid, and to obtain money and property owned by and under the custody and control of Medicare and Medicaid, by means of false and fraudulent pretenses, representations,

and promises, in connection with the delivery of and payment for health care benefits, items and services, in violation of Title 18, United States Code, Section 1347 and 371.

### Manner and Means

14. It was part of the conspiracy that Andre Kirkland and a co-conspirator known to the United States hired DR. WALTER CORNELIUS GOUGH, JR. at Revelation in order to increase the number of hospice patients and increase the amount of Medicare and Medicaid funds received by Revelation.

15. It was also a part of the conspiracy that WALTER CORNELIUS GOUGH, JR., and MAY BAILEY GOUGH would refer persons to Revelation for hospice care that WALTER CORNELIUS GOUGH, JR., and MAY BAILEY GOUGH knew were not eligible for hospice care because WALTER CORNELIUS GOUGH, JR., and MAY BAILEY GOUGH knew those persons were not terminally ill.

16. It was also a part of the conspiracy that WALTER CORNELIUS GOUGH, JR., after referring a patient he knew was not terminally ill to Revelation as the patient's referring physician, would then certify the patient as terminally ill on behalf of Revelation as its Medical Director.

17. It was also a part of the conspiracy that Andre Kirkland and a co-conspirator known to the United States would pay WALTER CORNELIUS GOUGH, JR. $14,000.00 per month for his patient referrals to Revelation; and that WALTER CORNELIUS GOUGH, JR., and MAY BAILEY GOUGH knew that these ineligible patients were being billed to Medicare and Medicaid through Revelation.

18. It was also a part of the conspiracy that Andre Kirkland and a co-conspirator known to the United States would pay MAY BAILEY GOUGH $4,000.00 per month for her

patient referrals to Revelation; and that WALTER CORNELIUS GOUGH, JR., and MAY BAILEY GOUGH knew that these ineligible patients were being billed to Medicare and Medicaid through Revelation.

19. It was also part of the conspiracy that Andre Kirkland, WALTER CORNELIUS GOUGH, JR., MAY BAILEY GOUGH, and another co-conspirator known to the United States, would cause false claims for hospice care to be submitted to Medicare and Medicaid through Revelation. Andre Kirkland knew the claims submitted to Medicare and Medicaid were false and fraudulent in that Andre Kirkland knew that the patients were not terminally ill.

20. It was also part of the conspiracy that Andre Kirkland would personally visit the ineligible patients who were not terminally ill in their homes, and that Andre Kirkland caused the patients to believe that the services Revelation was billing Medicare and Medicaid for were a service other than hospice, such as home health or another less expensive service.

### Overt Acts

21. During and in furtherance of the conspiracy and to affect the objects of the conspiracy, at least one of the co-conspirators committed at least one of the following overt acts on or about the dates listed.

22. On or about September 1, 2009, Revelation obtained a privilege license from the City of Clarksdale, Mississippi, to conduct its business at 89 Delta Avenue, Suite 104, Clarkdale, Mississippi.

23. On or about October 8, 2009, Andre Kirkland and a co-conspirator known to the United States executed and submitted to Medicare a Provider Enrollment Agreement, wherein Andre Kirkland and his co-conspirator identified themselves as owners of Revelation and agreed to abide by the rules, regulations and laws regarding the Medicare program.

24. On or about October 5, 2009, a co-conspirator known to the United States executed and submitted CMS Form 588, commonly known as an Electronic Funds Transfer Authorization Agreement, directing all Medicare payments be deposited into an account held at Covenant Bank, ending in #0230.

25. On or about December 15, 2010, Andre Kirkland executed a Medical Assistance Participation Agreement with Mississippi Medicaid, wherein Andre Kirkland agreed to abide by the rules, regulations and laws regarding the Medicaid program.

26. On or about December 15, 2010, Andre Kirkland executed a Direct Deposit Agreement Form, directing all Medicaid payments be deposited into an account held at Covenant Bank, ending in #0230.

27. On or about February 27, 2014, a co-conspirator known to the United States made a false statement to a Special Agent of the United States Department of Health and Human Services Office of the Inspector General regarding the amount of money Revelation paid DR. WALTER CORNELIUS GOUGH, JR. each month to serve as its Medical Director.

28. From on or about June 2011, to on or about September 2013, Andre Kirkland caused the following false claims to be submitted to Medicare, each claim constituting a separate overt act in furtherance of the conspiracy:

|  | PATIENT | DATE CLAIM PAID | AMOUNT |
|---|---|---|---|
| 28(a). | S.P. | 02/19/2013 | $3,044.33 |
| 28(b). | C.D. | 07/17/2012 | $1,693.59 |
| 28(c). | S.D. | 07/17/2012 | $1,693.59 |
| 28(d). | J.B. | 11/26/2012 | $4,103.22 |

| 28(e). | G.W. | 02/17/2012 | $1,954.14 |
| --- | --- | --- | --- |
| 28(f). | E.W. | 10/16/2012 | $3,908.28 |
| 28(g). | L.N. | 04/09/2012 | $1,042.21 |
| 28(h). | M.G. | 11/20/2012 | $2,605.52 |

All in violation of Title 18, United States Code, Section 371.

### NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

31. As a result of committing the offenses alleged in this Indictment, the defendants shall forfeit to the United States all property involved in or traceable to property involved in the offenses, including but not limited to all proceeds obtained directly or indirectly from the offenses, and all property used to facilitate the offenses. Further, if any property described above, as a result of any act or omission of the defendants: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property, which cannot be divided without difficulty, then it is the intent of the United States to seek a judgment of forfeiture of any other property of the defendants, up to the value of the property described in this notice or any bill of particulars supporting it.

All pursuant to Section 981(a)(1)(C), Title 18, United States Code, and Section 2461, Title 28, United States Code.

LORETTA LYNCH
ATTORNEY GENERAL OF THE UNITED STATES

*Gregory K. Davis* (signature)

GREGORY K. DAVIS
UNITED STATES ATTORNEY