1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF MISSISSIPPI

3
   UNITED STATES OF AMERICA,        )
4                                   )
            Plaintiff,              )        CASE NO. 4:16CR02
5                                   )
               VS.                  )
6                                   )
   MAY BAILEY GOUGH,                )
7                                   )
            Defendant.              )
8   _____

9

10         WAIVER OF INDICTMENT / FILING OF INFORMATION
            PLEA AS TO COUNT 1 OF THE INFORMATION
11         BEFORE DISTRICT JUDGE MICHAEL P. MILLS
            THURSDAY, SEPTEMBER 1, 2016; 1:35 P.M.
12                   OXFORD, MISSISSIPPI

13 FOR THE GOVERNMENT:

14      United States Attorney's Office
        DAVID FULCHER, ESQ.
15      501 East Court Street, Suite 4.430
        Jackson, Mississippi  39201

16

17 FOR THE DEFENDANT:

18      Travis Law Office
        WILLIAM FARLEY TRAVIS, ESQ.
19      8619 HWY 51 North
        Southaven, Mississippi  38671-3635

20

21
        Proceedings recorded by mechanical stenography, transcript
22 produced by computer.

23
                 RITA DAVIS YOUNG, FCRR, RPR, CSR #1626
24               FEDERAL OFFICIAL COURT REPORTER
                 911 JACKSON AVENUE EAST, SUITE 369
25                  OXFORD, MISSISSIPPI 38655

```
1        (CALL TO ORDER OF THE COURT)

2            THE COURT:  Mrs. Pennebaker-Wilkerson, would you call

3  the docket.

4            THE COURTROOM DEPUTY:  Court calls Cause No.

5  4:16CR02, United States of America v. May Bailey Gough.  This

6  is a waiver of indictment, filing of information, and plea to

7  Count 1 of the information.

8            THE COURT:  All right.  Who do we have from the

9  defendant -- I'm sorry -- the Government?

10           MR. FULCHER:  David Fulcher for the Government, Your

11 Honor.

12           THE COURT:  All right.

13      And for the defendant?

14           MR. TRAVIS:  Bill Travis for Ms. Gough, Your Honor.

15           THE COURT:  And you have your client with you?

16           MR. TRAVIS:  May we approach, Your Honor?

17           THE COURT:  Do we have anyone from probation?

18           MR. FOUNTAIN:  Andrew Fountain from probation, Your

19 Honor.

20           THE COURT:  Glad to have you, Mr. Fountain.

21           MR. FOUNTAIN:  Thank you.

22           THE COURT:  Yes.  Are you read to proceed?

23           MR. TRAVIS:  Yes.  Thank you, Judge.

24      (PARTIES COMING FORWARD)

25           MR. TRAVIS:  May she have a seat in front of the
```

1  microphone?

2          THE COURT:  That'll be fine.

3      You want to administer the oath.

4      (OATH ADMINISTERED BY THE COURTROOM DEPUTY)

5          THE COURT:  All right.  Ms. Gough, do you understand

6  that you are under oath; and any answers to these questions are

7  subject to the penalties of perjury, that is, making a false

8  statement under oath if you do not answer them truthfully?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  And your name is May Bailey Gough?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  And I am told that you wish to plead

13  guilty to a charge set forth in what's known as an information.

14  Is that correct?

15          THE DEFENDANT:  I do.

16          THE COURT:  And do you understand that you have not

17  been indicted on this charge?

18          THE DEFENDANT:  Yes, sir, I do.

19          THE COURT:  And that means that the grand jury has

20  not heard any evidence or decided whether you should be brought

21  to trial, and you have the right to have a grand jury to

22  consider your evidence.  The only thing that has happened is

23  that the U.S. Attorney has signed an affidavit charging you

24  with this crime.  Have you discussed waiving your right to

25  indictment by the grand jury with your attorney?

1           THE DEFENDANT:  Yes, I have.

2           THE COURT:  And do you understand that you do have a

3  right to go before the grand jury?

4           THE DEFENDANT:  Yes, sir, I do.

5           THE COURT:  Have any threats or promises been made to

6  induce you to waive indictment?

7           THE DEFENDANT:  No, they haven't.

8           THE COURT:  And do you waive your -- and is that what

9  you wish to do, is waive your indictment?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Has she signed a waiver?

12          MR. TRAVIS:  Yes, Your Honor.

13          THE COURT:  Have you signed it?

14          MR. TRAVIS:  I have, Your Honor.

15          THE COURT:  Okay.

16          MR. FULCHER:  (Passing document).

17          THE COURT:  (Perusing document).  Let it be filed.

18      And you have the information also?  You want to file it?

19          MR. FULCHER:  (Passing documents).

20          THE COURT:  Ms. Gough, before accepting your plea,

21  there are a number of questions that I must ask you.  If, at

22  any time, you wish to consult with your attorney or if you

23  don't understand the question, you let me know.

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  What is your full name?

1                THE DEFENDANT:  May Alice Bailey Gough.

2                THE COURT:  And how old are you?

3                THE DEFENDANT:  Sixty-nine.

4                THE COURT:  How far did you go in school?

5                THE DEFENDANT:  Completed high school.

6                THE COURT:  Are you able to speak and understand

7  English?

8                THE DEFENDANT:  Yes, I am.

9                THE COURT:  Are you presently under the influence of

10 any drugs, medicine, or alcohol?

11               THE DEFENDANT:  No, sir.

12               THE COURT:  Do you think you fully understand what is

13 happening here today?

14               THE DEFENDANT:  Yes, I do.

15               THE COURT:  Mr. Travis, you've talked with your

16 client today and earlier, I presume.  Do you have any questions

17 about her competency to enter a plea?

18               MR. TRAVIS:  No, Your Honor.

19               THE COURT:  Mr. Fulcher, do you have any questions

20 about her competency to enter a plea?

21               MR. FULCHER:  Your Honor, I have no questions about

22 her competency.

23               THE COURT:  All right.  Well, I find that Ms. Gough

24 is competent to enter a plea.  Have you had ample opportunity

25 to discuss your case with your attorney?

1          THE DEFENDANT:  Yes, I have.

2          THE COURT:  Are you satisfied with Mr. Travis's

3 representation of you?

4          THE DEFENDANT:  Yes, I am.

5          THE COURT:  Do you feel like he's looked out for your

6 best interests?

7          THE DEFENDANT:  Yes, I do.

8          THE COURT:  Do you understand that, under the

9 Constitution and the laws of the United States, you are

10 entitled to a trial by jury?

11          THE DEFENDANT:  I understand that.

12          THE COURT:  Do you understand, at trial, you would be

13 presumed innocent; and the Government would be required to

14 prove you guilty beyond a reasonable doubt before you could be

15 found guilty; and you would not be required to prove your

16 innocence?

17          THE DEFENDANT:  I understand it.

18          THE COURT:  Do you further understand that, in the

19 course of the trial, witnesses for the Government would have to

20 come into court and testify in your presence; your attorney

21 could cross-examine witnesses for the Government; and he could

22 also call other witnesses to testify on your behalf?

23          THE DEFENDANT:  Yes, I do.

24          THE COURT:  Are you aware that if you wished to

25 testify yourself in our own defense you would have that right

1  to do so, but if you chose not to testify no inference or

2  suggestion of guilt would be drawn by you so choosing?

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  If you plead guilty here today and if I

5  accept your plea, do you understand that you're going to waive

6  your right to trial and the other rights that I just discussed

7  with you?

8         THE DEFENDANT:  Yes, sir.

9         THE COURT:  Is it still your desire to plead guilty

10 to this information?

11        THE DEFENDANT:  Yes, it is.

12        THE COURT:  Have you received a copy of the charge

13 against you?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  And what is she charged with,

16 Mr. Fulcher?

17        MR. FULCHER:  Your Honor, the defendant, Ms. Gough,

18 is charged here in a single-count information with conspiracy

19 to defraud a health care benefit program in connection with the

20 delivery or payment for health care benefit items or services.

21        THE COURT:  Okay.  Are you aware that that's what

22 you're charged with?

23        THE DEFENDANT:  Yes, sir.

24        THE COURT:  Before you could be found guilty of this

25 charge, the Government would have to prove certain elements

1  against you beyond a reasonable doubt.

2       Mr. Fulcher, will you read these elements into the record?

3          MR. FULCHER:  Yes, Your Honor.  Your Honor, the

4  defendant here, May Bailey Gough, as I mentioned, is charged in

5  this single-count information with a violation of Title 18,

6  United States Code, Section 371 and Section 1347.

7       Title 18, United States Code, Section 1347 makes it a

8  crime for any person to knowingly and willfully execute, and

9  attempt to execute, a scheme and artifice to defraud any health

10 care benefit program in connection with the delivery or payment

11 for health care benefit items or services or to obtain money

12 and property from any health care benefit program by means of

13 false and fraudulent pretenses, representations, or promises in

14 connection with the delivery or payment for health care benefit

15 items or services.

16      The elements of this particular violation, which must be

17 proven beyond a reasonable doubt, are, first, that the

18 defendant knowingly and willfully executed, or attempted to

19 execute, a scheme or artifice to defraud a health care benefit

20 program; or that the defendant knowingly and willfully

21 executed, or attempted to execute, a scheme or artifice to

22 obtain money and property from a health care benefit program by

23 means of false and fraudulent pretenses, representations, or

24 promises as charged in the information.  And, second, that the

25 defendant acted willfully, that is, with the intent to defraud

1 a health care benefit program.

2     The phrase "scheme to defraud" includes any scheme to

3 deprive another of money or property by means of false or

4 fraudulent pretenses, representations, or promises.  A

5 representation may be false when it constitutes a half truth or

6 effectively conceals a fact, provided it is made with intent to

7 defraud.

8     The phrase "health care benefit program" includes, under

9 the definition of the law, the Medicare and Medicaid programs.

10 The count, as I mentioned, is a charge of conspiracy.  Title

11 18, United States Code, Section 371 makes it a crime for anyone

12 to conspire with someone else to commit an offense against the

13 laws of the United States.

14     The defendant is charged here with conspiring to knowingly

15 and willfully execute, and attempt to execute, a scheme and

16 artifice to defraud a health care benefit program in connection

17 with the delivery or payment for health care benefits.

18     Under the law, conspiracy is an agreement between two or

19 more persons to join together to accomplish some unlawful

20 purpose.  It's a kind of partnership in crime in which each

21 member becomes the agent of every other member.

22     And the elements of that offense, which must be proven

23 beyond a reasonable doubt, are, first, that the defendant and

24 at least one other person made an agreement to commit the crime

25 of defrauding a health care benefits program as charged in the

1  information.

2      Second, that the defendant knew the unlawful purpose of

3  the agreement and joined in it willfully, that is, with the

4  intent to further the unlawful purpose.  And, third, that one

5  of the conspirators, during the existence of the conspiracy,

6  knowingly committed at least one of the overt acts described in

7  the information in order to accomplish some object or purpose

8  of the conspiracy.

9      One may become a member of a conspiracy without knowing

10 all of the details of the unlawful scheme or the identities of

11 all the other alleged conspirators.  If a defendant understands

12 the unlawful nature of a plan or scheme and knowingly and

13 intentionally joins in that plan or scheme on one occasion,

14 that is sufficient to convict him or her for conspiracy, even

15 though the defendant had not participated before and even

16 though the defendant played only a minor part.

17     The Government need not prove that the alleged

18 conspirators entered into any formal agreement, nor that they

19 directly stated between themselves all the details of the

20 scheme.  Similarly, the Government need not prove that all of

21 the details of the scheme alleged in the information were

22 actually agreed upon or carried out nor must it prove that all

23 the persons alleged to have been members of the conspiracy were

24 such or that alleged conspirators actually succeeded in

25 accomplishing their unlawful objectives.

1      The mere presence at the scene of an event, even with the

2   knowledge that a crime is being committed, or the mere fact

3   that certain persons may have associated with each other and

4   may have assembled together and discussed common aims and

5   interests, does not necessarily establish proof of the

6   existence of a conspiracy.

7      Also, a person who has no knowledge of a conspiracy but

8   happens to act in a way which advances some purpose of the

9   conspiracy does not, thereby, become a conspirator.  Your

10  Honor, those are the elements of the offense charged in this

11  case.  And we submit to the Court that we would be able to

12  prove and meet these elements by evidence to be presented at

13  trial if it were to go to trial.

14          THE COURT:  All right.  Thank you.

15      Ms. Gough, do you have any questions about these charges?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  What are the maximum penalties she could

18  be sentenced to, Mr. Fulcher?

19          MR. FULCHER:  Your Honor, the maximum penalty for the

20  conspiracy as charged is not more than 5 years' imprisonment,

21  and/or a $250,000 fine; together with supervised release of not

22  more than 3 years.

23          THE COURT:  All right.

24      Do you understand these penalties, Ms. Gough?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Has there been a plea agreement entered

2  into?

3          MR. FULCHER:  Yes, sir.

4          THE COURT:  Would you state into the record the

5  substance of the plea agreement, please?

6          MR. FULCHER:  Yes, sir.  Your Honor, the agreement

7  between the defendant and the Government is set forth in two

8  documents.  The first is the plea agreement, and the second is

9  the plea supplement.  As set forth in the -- and we would also

10  note, for the record, that the complete terms of the agreement

11  between the defendant and the Government are contained in these

12  two written documents.  And I'll merely summarize the agreement

13  now for the Court and for the record and for the defendant.

14      In this case, the defendant, May Bailey Gough, has agreed

15  to plead guilty to a single-count information charging her with

16  what is commonly known as health care fraud or, that is,

17  conspiracy to commit health care fraud.

18      In reaching this agreement, the defendant has, among other

19  thing, waived certain rights.  The defendant has knowingly

20  waived, and understands that she is waiving, the right to

21  appeal the conviction on any ground whatsoever.

22      She's waiving the right to contest the conviction in any

23  postconviction proceeding, including, but not limited to, a

24  motion under Title 28, United States Code, Section 2255 and any

25  type of proceeding claiming double jeopardy or excessive

1   penalty.

2        She's waiving any right to seek attorneys fees and/or

3   costs under the Hyde Amendment, and she acknowledges that the

4   Government's position in this prosecution was not vexatious,

5   frivolous, or in bad faith.

6        She's also waiving all rights, whether directly asserted

7   or through a representative, to request, from any department or

8   agency of the United States, any records pertaining to the

9   investigation or prosecution of this case, including, without

10  any limitation, any such requests under the Privacy Act or the

11  Freedom of Information Act.

12       She further acknowledges and agrees that the factual

13  issues regarding sentencing will be resolved by the sentencing

14  judge, and she waives a right to a jury determination of any

15  such sentencing issues.

16       The defendant is also, as set forth in Paragraph 9 of the

17  plea agreement, agreeing to an exclusion from the Medicare

18  program and other federal health care programs.  She

19  understands and acknowledges that, as a result of this plea,

20  she will be excluded from Medicare, Medicaid, and all federal

21  health care programs for 10 years.

22       She agrees to complete and execute all necessary documents

23  provided by any department or agency of the federal government,

24  including, but not limited to, the United States Department of

25  Health and Human Services to effect this exclusion within

1   60 days of receiving the documents.

2       And, as specifically stated in writing in the plea

3   agreement, this exclusion will not affect the defendant's right

4   to apply for, and receive, benefits as a beneficiary under any

5   federal health care program, including Medicare and Medicaid.

6       There are recommendations that the Government has made in

7   exchange for the defendant's agreement to plead guilty.  Those

8   are set forth in the plea supplement, which are before the

9   Court and before the defendant.  Perhaps the -- one of the most

10  important ones to draw the Court's attention to is in

11  Paragraph 3, which is a conditional acceptance by the Court

12  under Rule 11(c)(1)(C).

13      And that is a recommendation that -- by the Government

14  that the -- a sentence of probation be imposed in this case

15  under the unique circumstances that this case presents.  Those

16  are the main terms of the plea agreement and, again, the

17  supplement, which is before the defendant and before the Court.

18  Both documents contain the entirety of the agreement between

19  the defendant and the Government.

20          THE COURT:  Ms. Gough, you've heard the prosecutor

21  state his understanding of the agreement that you entered into

22  with the Government.  Did he accurately state it as you

23  understand it to be?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  And is that your understanding,

1 Mr. Travis?

2          MR. TRAVIS:  Yes, Your Honor.

3          THE COURT:  And has it been executed?

4          MR. TRAVIS:  Yes, Your Honor.

5          MR. FULCHER:  Yes.  We have executed copies of each,

6 if I may approach.

7          THE COURT:  You want to introduce them into the

8 record?  And I'm aware of the provision in there for probation,

9 and I'll comment on that at sentencing.  But, at this time, I

10 will accept it and -- under these circumstances.

11          THE DEFENDANT:  Thank you.

12          THE COURT:  Has anybody, other than this agreement,

13 made any promises to you as to what sentence you will receive?

14          THE DEFENDANT:  No, sir.

15          THE COURT:  And you understand that the offense to

16 which you're pleading guilty is a felony; and, if your plea is

17 accepted, you will be adjudged guilty and such adjudication may

18 deprive you of valuable civil rights, such as the right to

19 vote, the right to hold public office, the right to serve on a

20 jury, and the right to possess any kind of firearm?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  And I'm not going to talk about the

23 guidelines unless you think it's necessary here, Mr. Travis.

24          MR. TRAVIS:  No, Your Honor.

25          THE COURT:  Have you discussed the guidelines?

1      MR. TRAVIS:  We have.

2      THE DEFENDANT:  (Nodding head).

3      THE COURT:  You understand what we're talking about?

4      THE DEFENDANT:  Yes, sir.

5      THE COURT:  And I will -- we will do the guidelines,

6  and it will be subject to the agreement that you've entered

7  into with the Government.  And she has waived all rights to

8  appeal.  Is that correct?

9      MR. FULCHER:  That's correct, Your Honor.

10     THE COURT:  With the exception of prosecutorial

11 misconduct or ineffective assistance of counsel.  Is that in

12 there?

13     MR. FULCHER:  That is correct, Your Honor.

14     THE COURT:  Okay.

15   Do you understand that, Ms. Gough?

16     THE DEFENDANT:  Yes, sir.

17     THE COURT:  What is the Government's evidence against

18 Ms. Gough?

19     MR. FULCHER:  Your Honor, if this case were to

20 proceed to trial, the Government would prove the following

21 evidence beyond a reasonable doubt, through the use of

22 documentary evidence, through medical records, and through

23 witness testimony, the evidence would show that -- the evidence

24 shows, through recipient interviews, primary care physician

25 interviews, patient's charts, and medical reviews, along with

1   bank statements and records, that Revelation Hospice and Andre

2   Kirkland were knowingly enrolling non-hospice eligible Medicaid

3   and Medicare recipients; and then filing false hospice claims

4   to Medicaid and Medicare for services that were not medically

5   necessary and/or were not even rendered.

6        As the Court, I know, is aware, Andre Kirkland has pled

7   guilty to these charges and has now been sentenced in this

8   court.  Specifically, with regard to May Bailey Gough, the

9   evidence shows that she personally helped recruit and enroll

10   non-hospice eligible Medicaid and Medicare recipients into

11   Revelation Hospice along with Andre Kirkland and others.

12        Kirkland, as a registered nurse and Revelation's director

13   of nursing, personally admitted non-hospice appropriate

14   Medicaid and Medicare recipients into Revelation and deceived

15   the patients about the true nature of the services in which

16   they were being enrolled.

17        And, as part of this deception, many patients unknowingly

18   signed do-not-resuscitate forms, along with undated hospice

19   revocation forms.  Kirkland would later use the revocation

20   forms to discharge patients from Revelation Hospice without the

21   patient's knowledge.

22        Andre Kirkland also personally paid Dr. Walter Gough an

23   amount of money above and beyond his contracted monthly medical

24   director salary.  He also personally paid May Bailey Gough

25   approximately $4,000 per month as a recruiter for Revelation

1  Hospice.

2      With regard to Revelation Hospice itself, the Mississippi

3  Medicaid program paid Revelation Hospice a total of $66,171.43.

4  The Medicare program paid Revelation Hospice a total of

5  $7,293,166.41.

6      After a medical review, there was a 100 percent denial of

7  all claims paid to the four Revelation Hospice Medicaid

8  recipients that were reviewed.  After a medical review, there

9  was a 100 percent denial of claims of the 30 patient --

10  Medicare patients sampled.

11      Revelation Hospice had an average live discharge rate of

12  93.30 percent.  By comparison, 2010 data shows that the

13  national average for live discharge was about 18 percent; and

14  the Mississippi rate was about 40.5 percent.

15      According to patient interviews, Andre Kirkland and May

16  Bailey Gough deceived patients about the true nature of the

17  services they were being enrolled in and never told patients

18  that they were terminally ill.

19      Andre Kirkland obtained signed, but undated, hospice

20  revocation forms from patients at the time of their admission.

21  These were used later by Revelation Hospice to discharge

22  patients without the patients' knowledge.

23      As an example, Kirkland did the admission of a patient

24  that I'll identify by her initials, S.P., who was a 29-year-old

25  pregnant female.  Her primary care physician, Dr. Katherine

1  Patterson, said that she was not terminally ill and was nowhere

2  near hospice appropriate.  Based on the information we have,

3  this particular patient is still very much alive and in good

4  health today.

5      The amounts billed to Medicare from Revelation Hospice and

6  the amounts paid per year include, in 2010, a billing of --

7  well, let me just cut to the chase and talk about the amount

8  that was paid.  In 2010, the amount paid was approximately

9  $73,000.  In 2011, it was over $1 million.  In 2012, Revelation

10  Hospice was paid over $3 million; 2013, Revelation Hospice was

11  paid $2.8 million.  And then, in 2014, Revelation Hospice was

12  paid $313,488.08.

13      Dr. Gough's contracted monthly salary was $5,000.  Andre

14  Kirkland personally delivered checks to Dr. Gough for $7,000;

15  often twice a month.  Kirkland also personally delivered checks

16  to May Bailey Gough for $2,000; often twice a month.  These are

17  the basic facts that the Government would prove in this case

18  beyond a reasonable doubt if this case were to proceed to

19  trial.

20          THE COURT:  Thank you.

21          MR. FULCHER:  Yes, sir.

22          THE COURT:  Ms. Gough, you've heard the prosecutor

23  state the evidence he had to present against you on this

24  particular charge.  Did you do what he said you did?

25          THE DEFENDANT:  Yes, I did.

1            THE COURT:  Well, I find there is a factual basis for

2    you to plead guilty.  Do you plead guilty or not guilty to

3    Count 1 of the information?

4            THE DEFENDANT:  Guilty.

5            THE COURT:  It is the finding of the Court, in the

6    case of the United States of America v. May Bailey Gough, that

7    the defendant is fully competent and capable of entering an

8    informed plea; that the defendant is aware of the nature of the

9    charges and the consequences; and that the plea of guilty is a

10   knowing and voluntary plea supported by an independent basis in

11   fact containing each of the essential elements of the offense.

12          Your plea is therefore accepted, and you are now adjudged

13   guilty of that offense.  Your sentencing will be January

14   the 19th, 2017.  And Ms. Pennebaker says I'm supposed to set a

15   bond.  Is that correct?

16           THE COURTROOM DEPUTY:  Yes, sir.

17           THE COURT:  Are there any recommendations?

18           THE COURTROOM DEPUTY:  Yes, sir.  It's here.

19           THE COURT:  Ms. Pennebaker said she could be released

20   on her own recognizance.

21           THE DEFENDANT:  Thank you.

22           THE COURT:  Any objection?

23       MR. FULCHER:  None whatsoever.

24           THE COURT:  Probation have any problem?

25           MR. FOUNTAIN:  That would be our recommendation, Your

1  Honor.

2          THE COURT:  That would be your --

3          MR. FOUNTAIN:  Yes, sir.

4          THE COURT:  Okay.  Are you going to go over these

5  conditions of her bond with her?

6          MR. FOUNTAIN:  I will, Your Honor.

7          THE COURT:  Okay.  That'll save me having to read

8  them in court.

9          MR. FOUNTAIN:  Yes, sir.

10         THE COURT:  All right.  I think she understands.

11      Do you understand what I've just done?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  All right.

14      Is there anything further to take up from the Government

15  at this time?

16         MR. FULCHER:  Not from the Government, Your Honor.

17         THE COURT:  Anything from the defense?

18         MR. TRAVIS:  No, thank you, Your Honor.

19         THE COURT:  You want to meet with her?

20         MR. FOUNTAIN:  Yes, Your Honor.

21         THE COURT:  You need to meet with this gentleman over

22  here.  Court will be in recess.

23         MR. FULCHER:  Thank you, Your Honor.

24         MR. TRAVIS:  Thank you, Judge.

25              (THE HEARING ENDED AT 2:01 p.m.)

1                     **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4               I, Rita Davis Young, Federal Official Realtime

5  Court Reporter, in and for the United States District Court for

6  the Northern District of Mississippi, do hereby certify that

7  pursuant to Section 753, Title 28, United States Code that the

8  foregoing is a true and correct transcript of the

9  stenographically reported proceedings held in the

10  above-entitled matter; and that the transcript page format is

11  in conformance with the regulations of the Judicial Conference

12  of the United States.

13

14

15                   Dated this 25th day of January, 2017.

16

17

18

19                   /s/ Rita Davis Young

                       RITA DAVIS YOUNG, FCRR, RPR, CSR #1626

20                   Federal Official Court Reporter

21

22

23

24

25