```
                   UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF MISSISSIPPI


UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )         CASE NO. 4:16CR002
                                )
            VS.                 )
                                )
MAY BAILEY GOUGH,               )
                                )
        Defendant.              )



         SENTENCING AS TO COUNT 1 OF THE INFORMATION
             BEFORE DISTRICT JUDGE MICHAEL P. MILLS
            THURSDAY, JANUARY 19, 2017; 11:00 A.M.
                      OXFORD, MISSISSIPPI

FOR THE GOVERNMENT:

     United States Attorney's Office
     DAVID H. FULCHER, ESQ.
     501 East Court Street, Suite 4.430
     Jackson, Mississippi  39201


FOR THE DEFENDANT:

     Travis Law Office
     WILLIAM FARLEY TRAVIS, ESQ.
     8619 HWY 51 North
     Southaven, Mississippi  38671-3635



     Proceedings recorded by mechanical stenography, transcript
produced by computer.
```

**RITA DAVIS YOUNG, FCRR, RPR, CSR #1626**
FEDERAL OFFICIAL COURT REPORTER
911 JACKSON AVENUE EAST, SUITE 369
OXFORD, MISSISSIPPI 38655

1      (CALL TO ORDER OF THE COURT)

2          THE COURT:  Mrs. Pennebaker-Wilkerson, would you call

3 the docket.

4          THE COURTROOM DEPUTY:  Court calls Cause No.

5 4:16CR002, United States of America v. May Bailey Gough.  This

6 is a sentencing as to Count 1 of an information.

7          THE COURT:  All right.  Who do we have from the

8 Government?

9          MR. FULCHER:  Your Honor, Dave Fulcher from the U.S.

10 Attorney's Office in Jackson.

11         THE COURT:  All right.

12     And for the defense?

13         MR. TRAVIS:  Good morning, Your Honor.  Bill Travis

14 for May Gough, please.

15         THE COURT:  Do you have your client?

16         MR. TRAVIS:  Yes.

17         THE COURT:  Do we have anyone from probation?

18         MR. FOUNTAIN:  Andrew Fountain from probation.

19         THE COURT:  Glad to have you.

20     Are you ready to proceed, Mr. Travis?

21         MR. TRAVIS:  Yes.  Come on, Ms. May.

22     May Ms. Gough sit in a chair, Your Honor?

23         THE COURT:  She may.

24         MR. TRAVIS:  Thank you.  Thank you.

25     (PARTIES COMPLYING)

1      THE COURT:  All right.  Ms. Gough, on a previous day,
2 you plead guilty to Count 1 of an information which charged
3 conspiracy to defraud Medicare and Medicaid.  You are now
4 before the Court for sentencing.
5      Mr. Travis, have you reviewed the Presentence Report with
6 your client?
7      MR. TRAVIS:  Yes, we have, Your Honor.
8      THE COURT:  Do you have any objections?
9      MR. TRAVIS:  No, Your Honor.
10     THE COURT:  Does the Government have any objections?
11     MR. FULCHER:  No, sir, we have no objections.
12     THE COURT:  All right.
13     Before sentencing, Ms. Gough, is there anything you would
14 like to say?
15     THE DEFENDANT:  That I'm sorry for what I did.
16     THE COURT:  All right.
17     Mr. Travis, did you have anything to say?
18     MR. TRAVIS:  Just briefly, Your Honor.  I know Your
19 Honor's covered the Presentence Report; but, you know, we're
20 dealing with a nice lady who's 70 years of age and certainly
21 has some serious and significant health issues.
22     She's had a tough life from the time she was a young
23 person, and she's a strong Christian lady.  I know there were
24 some things alluded that she has some mental issues as far
25 as -- she's been through a lot with the loss of her husband and

```
 1  everything; but she's assuring me that, with family support,
 2  she's doing as well as expected; doing well today as we speak.
 3          She basically, Your Honor, is a person before the Court
 4  with no criminal history; it's a Category I.  And we're asking
 5  the Court to consider probation on this matter.  The Government
 6  has taken that position.
 7          I know it's totally and ultimately up to this Court to do
 8  what the Court thinks is right, and we would ask the Court to
 9  consider that.  She's not only got her hands full with her own
10  health; but she's also still, in a significant way, got her
11  arms around her 101-year-old mother as far as being a caregiver
12  for her also, so.
13          She has a lot of family and support around her.  I think
14  she could certainly be a candidate that probation would work
15  for her.  She's been out on her own recognizance.  There's been
16  absolutely no issues.  And we'd ask the Court to consider all
17  of that.
18              THE COURT:  All right.
19              MR. TRAVIS:  Thank you.
20              THE COURT:  Thank you.
21       Mr. Fulcher, did you have anything to say?
22              MR. FULCHER:  Only, Your Honor, that we do stand by
23  the recommendation that we've set forth in the plea agreement
24  and the plea supplement.
25              THE COURT:  What was that recommendation?
```

1          MR. FULCHER:  It is a recommendation of probation,
2  Your Honor.
3          THE COURT:  Uh-huh.
4      Well, Ms. Gough, I have -- well, I'll first off say that I
5  will adopt the Presentence Investigation Report without change
6  and find that no count carries a mandatory minimum sentence.
7  The statute provides for up to 5 years' imprisonment, up to a
8  $250,000 fine; 0 to 3 years' supervised release; and a $100
9  special assessment.
10      The guidelines -- you have a total offense level of 23.
11  The guidelines -- you have a criminal history category of Roman
12  Numeral I.  And the guidelines provide for an imprisonment
13  range of 46 months to 57 months, a supervised release range of
14  1 to 3 years, and a fine of 10,000 up to 100,000 dollars.
15      The fine will be waived because of your inability to pay.
16  And I have read your history; and it is quite remarkable,
17  frankly.  You were born in Natchez.  Is that correct?
18          THE DEFENDANT:  Correct.
19          THE COURT:  And pretty much deserted by your
20  mother --
21          THE DEFENDANT:  Yes, sir.
22          THE COURT:  -- as a child --
23          THE DEFENDANT:  Yes, sir.
24          THE COURT:  -- and raised yourself and ended up in
25  Mound Bayou.  Is that right?

1      THE DEFENDANT:  Yes, sir.

2      THE COURT:  And you've worked hard all your life, and
3 you were working as a maid when you met your husband.

4      THE DEFENDANT:  Yes, sir.

5      THE COURT:  And he was a doctor.

6      THE DEFENDANT:  Yes, sir.

7      THE COURT:  And was he in Mound Bayou?

8      THE DEFENDANT:  Yes, sir.

9      THE COURT:  And everything was going pretty good, I
10 think.

11     THE DEFENDANT:  Yes, sir.

12     THE COURT:  Then the tragedy here is this whole
13 program of hospice that he got involved in, and that some
14 others got involved in.  We're really just looting Medicare and
15 Medicaid, stealing from the Government, claiming false
16 services.  People that didn't need hospice, you were putting in
17 there.

18     And you were taking money from a federal program that was
19 designed to help poor people and stealing it.  That's what was
20 going on.  Unfortunately -- and I have sat here on these
21 cases -- this -- this scheme -- and it's a federal -- a
22 federal -- fraud is rampant in the Mississippi Delta.  And I
23 have watched it for years now.

24     And I don't know how much you can protest.  It is an
25 absolute crime what is being done through Medicare and Medicaid

1 fraud and, primarily, hospice, which picks out the most
2 vulnerable people, people who are -- can do the least for
3 themselves and takes advantage of them. And you've taken
4 advantage of the community.
5    But, in your case, you had four children that you raised.
6 Is that right? How many children do you have?
7        THE DEFENDANT: We raised five, but we have six with
8 my stepdaughter.
9        THE COURT: Six?
10       THE DEFENDANT: We raised five.
11       THE COURT: And I think you did a good job. They are
12 teachers and Army -- served in the Armed Forces. And one of
13 your children is helping take care of you now. Is that right?
14       THE DEFENDANT: She and her husband and her children,
15 yes, sir.
16       THE COURT: And everybody else involved in this
17 particular scheme -- and this is not the only one I've seen.
18 But you're the only person left, aren't you?
19       THE DEFENDANT: Yes, sir.
20       THE COURT: And nobody's served a day of -- in the
21 penitentiary, as far as I know.
22    Do you know?
23       MR. FULCHER: I believe that's correct, Your Honor.
24       THE COURT: And how many millions did they steal?
25       MR. FULCHER: It was upwards of over $5 million.

1          THE COURT:  Uh-huh.  So here we are.  I think, in
2  your case, Ms. Gough -- and the total amount of restitution is
3  $5,420,105.45, right?
4          MR. TRAVIS:  Yes, sir.
5          THE COURT:  Well, I think it would be an even bigger
6  crime to send her to the penitentiary after everybody else has,
7  one way or the other, avoided it, not necessarily in good ways.
8       But I think, Ms. Gough, that had you not -- I think other
9  people took advantage of you.  And what you were was really the
10 bookkeeper, as best I can tell.  And I think it would just be
11 unfair for you to have to serve prison time, be the only one in
12 this particular group.
13      So I'm going to -- this is going to be your sentence:
14 Pursuant to the Sentencing Reform Act of 1984, it is the
15 judgment of the Court that the defendant, May Bailey Gough, is
16 hereby placed on probation for a term of 5 years.
17      She shall comply with the following mandatory conditions:
18 She must cooperate in the collection of DNA as directed.  I
19 don't think she needs any mental health treatment.
20      Do you, Mr. Fountain?
21         MR. FOUNTAIN:  Well, Your Honor, she mentioned some
22 stuff during the interview that caused concern.
23         THE COURT:  Do you want some sort of mental health
24 treatment?
25         THE DEFENDANT:  No, sir.  Because, at the time, my

1  husband had recently passed; and, since then, I've had
2  counseling by several ministers, prayer worshippers in my
3  church.  And I realize that if I would do something like that I
4  would not meet my husband in heaven, and I would leave my
5  children and grandchildren and my mother to grieve; and I
6  really don't --
7           THE COURT:  Well --
8           THE DEFENDANT:  I don't.  I am in better shape now.
9  I accept my husband's death.  I know, you know -- so I really
10 don't need any counseling and stuff because I get it every
11 Sunday from my pastor.
12          THE COURT:  Where do you go to church?
13          THE DEFENDANT:  New (inaudible) Missionary Baptist
14 Church in Mound Bayou.
15          THE COURT:  And you were thinking about suicide?  Is
16 that what you were talking about?
17          THE DEFENDANT:  When my husband first died.  Because
18 we had been together 43 years.  We were together all the time,
19 22 hours out of 24, when he made rounds.  But then my baby girl
20 got on me, and they talked to me.  And my pastor talked to me
21 and said, well, if you do such, you're going straight to hell;
22 you're not going to have time to apologize to God.  So that
23 doesn't even cross my mind anymore.
24          THE COURT:  Okay.  Well, what do you think,
25 Mr. Fountain?

1           MR. FOUNTAIN:  Your Honor, it won't necessarily have
2  to be used if we have it on there if the issue was to come up.
3           THE COURT:  Well, it seems like the Lord's doing it,
4  doesn't it?
5           MR. FOUNTAIN:  Yes, sir.
6           THE COURT:  I don't know that we can improve on that;
7  so, if it comes up and you need it, you tell your probation
8  officer.
9           THE DEFENDANT:  Yes, sir.
10          THE COURT:  You shall provide the probation officer
11 with access to any requested financial information, and you
12 shall not incur new credit charges or open additional lines of
13 credit without the approval of the probation officer.
14      I don't know what to make of this restitution,
15 Mr. Fountain.  Mr. Kirkland is the one that caught cancer.  Is
16 that right?  Is he the one that we sent home because he had
17 cancer?
18          MR. FOUNTAIN:  Yes, sir.
19          THE COURT:  So he's not -- I mean, is he the only
20 other living defendant?
21          MR. FOUNTAIN:  At this time, Your Honor, I believe he
22 is.
23          THE COURT:  Co-defendant.  So we're going to put --
24 we're going to ask Mr. Kirkland and Ms. Gough to repay the
25 $5,240,000.  Well, I'm going to have to order it.  I don't know

1  that it'll get paid.  But restitution in the amount of
2  $5,420,105.45 shall be made directly to the U.S. District Court
3  Clerk's Office for disbursement to the victim, Medicare,
4  Baltimore, Maryland.
5        Payments will be made in equal monthly installments as
6  determined by the application of the criminal monetary payment
7  schedule.  Restitution is ordered jointly and severally with
8  Andre Kirkland in Case No. 4:15CR00130-001.  No fine is being
9  ordered due to her inability to pay.  However, she shall pay a
10 special assessment of $100, which is due immediately.
11       She has expressly waived any and all rights to appeal the
12 conviction or the sentence imposed in this case or to contest
13 or collaterally attack the conviction or sentence, except
14 claims relating to prosecutorial misconduct or ineffective
15 assistance of counsel.
16       Do you understand the sentence that I have just stated?
17            THE DEFENDANT:  Yes, sir.
18            THE COURT:  All right.  Is there anything further
19 from the defendant?
20            MR. TRAVIS:  No, thank you, Your Honor.
21            THE COURT:  Anything from the Government?
22            MR. FULCHER:  Your Honor, we do move, at this point,
23 to dismiss all the charges that are pending against the
24 defendant's husband, Dr. Gough --
25            THE COURT:  Well, he's dead, isn't he?

```
 1            MR. FULCHER:  Yes, sir.  He was charged in the same
 2   information prior to his death, and we will submit a proposed
 3   order to the Court to that effect.
 4            THE COURT:  That'll be granted.  Were there any other
 5   charges against her?
 6            MR. FULCHER:  No, Your Honor.
 7            THE COURT:  Okay.
 8       Well, Ms. Gough, good luck.
 9            THE DEFENDANT:  Thank you, sir.
10            THE COURT:  All right.
11            THE DEFENDANT:  Thank you.
12            THE COURT:  Thank you.
13            MR. TRAVIS:  Thank you for the Court's time, Your
14   Honor.
15            THE COURT:  The Court will be in recess.
16                 (THE HEARING ENDED AT 11:14 a.m.)
17
18
19
20
21
22
23
24
25
```

1               CERTIFICATE OF OFFICIAL REPORTER

2

3

4          I, Rita Davis Young, Federal Official Realtime

5  Court Reporter, in and for the United States District Court for

6  the Northern District of Mississippi, do hereby certify that

7  pursuant to Section 753, Title 28, United States Code that the

8  foregoing is a true and correct transcript of the

9  stenographically reported proceedings held in the

10 above-entitled matter; and that the transcript page format is

11 in conformance with the regulations of the Judicial Conference

12 of the United States.

13

14

15                     Dated this 3rd day of May, 2017.

16

17

18

19                     /s/ Rita Davis Young
                       RITA DAVIS YOUNG, FCRR, RPR, CSR #1626
20                     Federal Official Court Reporter

21

22

23

24

25